[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
April 3, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-13022
Non-Argument Calendar
_____

D. C. Docket No. 06-04659-CV-IPJ

SHERRY SMITH,

Plaintiff-Appellant,

versus

SOCIAL SECURITY ADMINISTRATION,
Commissioner, Michael J. Astrue,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(April 3, 2008)**

Before BIRCH, CARNES and BARKETT, Circuit Judges.

PER CURIAM:

Sherry Smith appeals the district court's order affirming the Commissioner's

denial of her application for disability insurance benefits, pursuant to 42 U.S.C. § 405(g). On appeal, Smith first argues that the Vocational Expert's ("VE") testimony did not constitute substantial evidence because the Administrative Law Judge's ("ALJ") hypothetical question to the VE assumed that Smith could perform sedentary work and did not account for any level of pain or her other limitations. Smith also contends that the ALJ improperly disregarded the opinion of Dr. Jose Oblena, a consulting physician, who reported that her constant pain would diminish her capacity to work, and that the ALJ improperly substituted his own opinion in place of Dr. Oblena's opinion. Second, Smith maintains that the Appeals Council ("AC") failed to consider the new evidence she submitted to it because, if it had considered the new evidence, it would have granted review because the evidence would likely change the ALJ's decision. Third, Smith argues that the district court erred by requiring her to show good cause to submit new evidence to the AC. Fourth, Smith argues that, because the new evidence she submitted showed she was eligible for benefits under certain listings, the district court erred by failing to consider the new evidence, by not remanding the case to the AC, and by failing to consider the new evidence in determining whether the ALJ's decision was based on substantial evidence. After review, we AFFIRM.

# I. BACKGROUND

Smith applied for a period of disability and disability insurance benefits, alleging a disability onset date of 17 July 2001.  Her application was denied, and she requested further administrative review.  A hearing was held before an ALJ, who denied benefits to Smith.  Smith filed a request for review with the Appeals Council ("AC") and submitted additional evidence.  The AC denied Smith's request for review.  Smith then filed suit in the district court, and the court affirmed the ALJ's decision.   Smith also filed a motion to remand on 5 September  2007, which we held in abeyance to allow her to file a Rule 60(b) motion, which was denied on 14 November 2007.  We denied Smith's motion to remand on 3 December 2007.

At the hearing before the ALJ, Smith testified that she was 43 years old, had completed high school, and had received a clerk-typist certificate from a technical college.  She claimed to be unable to work because she could not sit, stand, or lift things, and she needed to lay in bed during the day.  These limitations resulted from a back injury and back surgery related to that injury.  She complained that her back pain and leg problems did not improve after her surgery, that her range of motion was limited, and that bending over increased her pain.  She also complained of pain spasms in her back and foot, burning in her left leg, and

numbness in her left foot. She stated she had constant pain, and intermittent stabbing pain, but that a transcutaneous electrical nerve stimulator ("TENS") unit helped some. She stated that on a good day her pain would be a four or five out of ten, and on a bad day, which were about four out of every seven days, her pain would be nine and a half to ten out of ten. In addition, she described a broken ankle and knee pain. Smith also testified that she was depressed and that she did not want to get out of bed, had a fear of facing people, and experienced panic attacks. She had problems with insomnia and slept an average of four hours a night, a problem that she attributed to her back pain and depression, but she stated that Trazodone helped her. She claimed that her pain and depression had worsened since January 2004.

Regarding her limitations, Smith testified that she could walk up one aisle at the grocery store before needing to stop and sit down and could only stand for three minutes before experiencing severe pain. She could only sit for about ten minutes before having to shift around. She could only lift a can of soda, and lifting a gallon of milk induced pain. She could wash up to three dishes at a time before needing to sit down, and she could fold clothes but had to move around after folding three or four items. She needed to lay down during the day for an average of 20 minutes of rest, 8 times a day. She was able to drive a little bit. The side-

4

effects of her medications had a significant negative impact on her daily life. Her typical day involved taking pain medication, doing stretches in bed, doing chores like folding towels and washing a couple of dishes, sitting down, and watching some television.

The medical records before the ALJ showed that Smith injured her back when lifting oxygen tanks in July 2001. This injury resulted in pain in her left hip and calf extending into her foot. She was seen by Dr. C. H. McCrimmon of Anniston Orthopaedic Associates, P.A. for her pain. A July 2001 MRI showed she had an "[a]symmetric L4-5 left lateral disc protrusion extending into caudal left L4-5 neural foramen[,]" "[d]esiccation of the L5-S1 disc without evidence of spondylosis[,]" and "L4-5 and L5-S1 facet osteoarthritic changes." R2 at 381. Dr. McCrimmon referred her to a neurosurgeon because of her continued complaints of pain.

Dr. Charles Clark of Neurosurgical Associates, P.C., became Smith's treating neurologist in October 2001. On 28 November 2001, Dr. Clark performed a lumbar diskectomy (surgical removal of an intervertebral disk in the part of the spine between the ribs and pelvis) for a herniated L4-5 lumbar disc. After a follow-up examination on 20 December 2001, Dr. Clark concluded that she was doing reasonably well and recommended exercises and a return to light duty in

several weeks with a 20-pound weight lifting restriction.  On 15 January 2002,

Smith had returned to desk work and was doing extremely well with no complaints

and she was tolerating physical therapy.  Dr. Clark found that she had occasional

paresthesias (a sensation of pricking, tingling, or creeping on the skin usually

associated with injury or irritation of a sensory nerve or nerve root) in her left foot,

but that it was improving.  He anticipated maximum medical improvement within

four months and indicated that Smith could return to work provided she did not

engage in excessive bending, stooping, or lifting of over 25 pounds.

Smith began physical therapy in January 2002.  The progress notes indicate

that she had good and bad days, continued pain, and some difficulty sleeping.  An

April 2002, discharge summary indicated that she partially achieved her initial

goals, had a significant increase in strength and range of motion, but continued to

complain of high levels of pain.  A 30 April 2002 report from Dr. Clark indicated

that Smith complained of persistent lower back pain extending into her left hip and

leg, which had been present for six weeks.  She had good strength in both legs, but

experienced some left hip pain when raising her leg.  An MRI in May 2002 showed

"no evidence of disc herniation, central canal or neural foraminal stenosis" at L3-4,

"[d]egenerative changes at L5-S1 with an annular tear in the posterior midline of

the disc space and a mild associated annular bulge" and enhancing scar tissue at

6

L4-5, but no evidence of recurrent or residual disc herniation. Id. at 122. As of 24 June 2002, Dr. Clark stated that Smith could not return to work. On 30 October 2002, Dr. Clark indicated that Smith had not returned to work, that epidural blocks and physical therapy did not provide lasting relief, and that he could offer her nothing else from a surgical standpoint.

Between June and October 2002, Smith received treatment at Quality of Life Health Services, Inc. ("Quality of Life") for a variety of problems including chronic low back pain, hypothyroidism (deficient activity of the thyroid gland), allergies, lumbar disc disease, and high blood pressure. On her medical history form, Smith indicated that she could dress herself, make her own meals, and do her own shopping. Smith had a consultive examination with Dr. Jose Oblena on 3 December 2002. She reported constant hip and leg pain, which was worse on her left side, and which she rated at a six out of ten on the pain scale. She further indicated that she could not sit or stand for a long time, but that her medications, Flexeril and Lortab, had eased her pain a little. She was in no acute distress and the strength of her major muscle groups was five out of five with no atrophy. Dr. Oblena commented that Smith "will have difficulty finding and keeping a job due to her constant pain." Id. at 242.

On 9 January 2003, a DDS physician performed a physical residual

7

functional capacity ("RFC") assessment of Smith. The assessment found that she could occasionally lift or carry 20 pounds and could frequently lift or carry 10 pounds. The assessment indicated that she could stand, walk, or sit for approximately six hours in an eight-hour workday, and she could push or pull with unlimited frequency. The report further indicated that she could balance, stoop, kneel, crouch, and crawl occasionally. The report provided that Smith reported severe pain in her back, but concluded that "claimant[']s symptoms are deemed partially credible." Id. at 252.

Dr. Vance Moore and the Oxford Family Practice provided Smith's primary care from 1981 to April 2003. Their records primarily contain lab results and x-ray requests and results. Her listed diagnoses as of April 2003 included pharyngitis (inflammation of the part of the digestive and respiratory tracts situated between the cavity of the mouth and the esophagus), history of allergic rhinitis (inflammation of the mucous membrane of the nose), sinusitis, and arthritis with arthralgias (pain in one or more joints).

Smith received treatment at the Calhoun-Cleburne Mental Health Board, Inc. ("Calhoun-Cleburne"), for depressive features and mood disorders relating to her back injury from April 2003 to September 2003. In April 2003, she reported that Zoloft afforded her some relief. By May 2003, Smith had made progress in all

areas except insomnia.  Upon her discharge in September 2003, she had a stable mood, she had no tearfulness, she took pleasure in various activities, her insomnia was more related to her pain than her mood, and her overall progress was good.

On 21 January 2004, Smith was examined by Laura Kezar, M.D., a physical medicine and rehabilitation specialist.  Smith reported that her medication provided some relief, but she experienced constant low back pain with pain radiating across her hips and intermittently down her leg.  She also reported an ankle fracture for which she was receiving conservative treatment.  Dr. Kezar observed that Smith appeared uncomfortable, her affect was constricted, and her mood was depressed, but that she was alert, oriented, cheerful at times, had good eye contact, and was neatly groomed.  Smith had a guarded range of motion and tenderness to deep palpation in her lower lumbar region, the sacroiliac joints, and throughout her paravertebral muscles and in the buttock muscles, with scattered trigger points.  Smith was able to drive short distances and ate a regular diet.  The motor examination showed normal tone and generally normal sensation to light touch pinprick.  Dr. Kezar opined that Smith suffered from (1) chronic low back pain, left lower extremity radiculopathy (any pathological condition of the nerve roots), failed back syndrome with nociceptive and neuropathic pain components "which should be amenable to treatment;" (2) a recent ankle fracture; (3) prolonged sleep

9

disturbance, depressed mood, financial stress, and litigation; (4) hypertension; and (5) hypercholesterolemia. Dr. Kezar assigned a ten percent impairment to Smith as a whole. Id. at 396.

Dr. Kezar indicated in her "Plan" that Ultram was reasonable for pain management, Flexeril had benefitted Smith in the past for acute muscle spasms and would be restarted, and Desyrel would have a positive impact on Smith's perception of pain and potentially could help her sleep. She stated that she believed Smith had reached Maximum Medical Improvement and that her condition was static and well-stabilized. With respect to Smith working at a sedentary level, Dr. Kezar stated "I certainly think this is reasonable. I do not see that [Dr. Clark] gave her specific work restrictions." Id. at 397. She advised Smith to contact Vocational Rehabilitation Services for job retraining or education and referred Smith to a chronic pain management physician.

Smith saw Dr. David W. Cosgrove, a pain management specialist, beginning in September 2004. Her legs showed no unusual atrophy, impingement, or pseudomotor change, and she had good internal and external rotation at the hips with no crepitus in the knees. Lateral bending of Smith's back produced localized back pain but no radicular (involving a nerve root) complaints, and rotational movement was normal. Dr. Cosgrove assessed Smith as having chronic

10

pain, failed back surgery syndrome, radiculopathy in her lower left leg, mild treated depression, hypertension, hyperthyroidism, and seasonal rhinitis. He suggested continuing with the medications given the benefit they provided in the past.

In a 4 October 2004, follow up note, Dr. Cosgrove reported that Smith was alert, oriented, pleasant, and appeared to be in no apparent distress. Smith reported that her pain was a four or five out of ten, she derived significant benefit from her medications, and she received good benefit from her TENS unit. Dr. Cosgrove noted that Smith exhibited no excessive pain behaviors. She pointed out a tender spot on her right foot, but Dr. Cosgrove found no palpable or visible abnormality. Dr. Cosgrove recommended continuing Smith's medications unchanged and a follow-up in three months.

At the 7 March 2005 hearing, the ALJ posed a hypothetical to a Vocational Expert, asking the VE to consider:

> a younger individual who has a high school education plus [] at least 15 months of technical college, who has the restrictions of, for occasional bending, stooping, squatting, climbing, no push-pull movement involving the left lower extremities, no driving, no unprotected height. She should work in a temperature controlled environment and given an option to sit or stand at will. And for purposes of our scenario, she has a mild to moderate level of pain and/or depression.

11

Id. at 770. The VE testified that Smith would not be able to return to her past work activity. Upon being asked if there were sedentary work opportunities for someone as described, the VE testified that approximately 1,500 cashier jobs, 3,000 to 4,000 clerical jobs, 2,000 automatic machine tenders, and 1,000 to 1,500 security monitor jobs existed in the north central Alabama area alone. The ALJ returned to the original hypothetical and added the limitation of having to lie down four times during work hours for 30 minutes each time. The VE responded that no work would be available at either the light or sedentary level. The ALJ then removed the restriction of needing to lie down and added the restriction of a moderately severe to severe pain level, and alternatively, moderately severe to severe levels of depression, and the VE responded that she would not be able to work at all. The ALJ then changed to hypothetical to include medication side-effects that imposed moderately severe to severe limitations, and the VE stated that no work could be done.

The ALJ denied benefits on 8 December 2005. The ALJ found that Smith was not currently engaged in substantial gainful activity. He found that she had severe impairments, which were failed back surgery syndrome, left lower extremity radiculopathy, mild depression, hypertension, and hypothyroidism. The ALJ found that none of her impairments met the criteria of the disability listings in

20 C.F.R. § 404, appendix 1, subpart P, and specifically did not meet the criteria of listing § 1.04 (disorders of the spine), because there was no evidence that Smith had a compromise of a nerve root of the spinal cord with evidence of nerve root compression. The ALJ then calculated her RFC to determine whether she could perform her past relevant work, and in so doing, he considered various factors including Smith's daily activities, precipitating and aggravating factors, the side-effects of her medication, other treatments, and Smith's subjective complaints of pain.

Regarding the medical evidence of her pain, the ALJ found that, in early 2002, Dr. Clark found no clear evidence of disk herniation and did not report that she had disabling pain or limitations due to her back impairment. The ALJ noted that Dr. Kezar, a rehabilitation specialist, stated, in the January 2004 evaluation, that it was reasonable for Smith to perform a sedentary level job, and that Dr. Kezar recommended that Smith see vocational rehabilitation services for job retraining or education. Based on this, the ALJ found that Dr. Kezar did not believe that Smith had disabling pain or limitations due to her back problems. Next, the ALJ considered that Dr. Cosgrove, as Smith's pain management specialist, reported that her pain level in October 2004 was no more than four to five out of ten, which did not rise to the level of disabling pain. The ALJ noted

that Dr. Cosgrove did not indicate that she had disabling pain, and he reported that she received significant benefits from her medication and her TENS unit and did not appear to be in distress. The ALJ concluded that of Smith's treating physicians, the specialists who treated her back, the physicians at Quality of Life, and Dr. Moore, no one ever reported that Smith had disabling pain or limitations.

Regarding her subjective complaints of pain, the ALJ found inconsistencies between her testimony and the medical records. The ALJ noted that Smith testified at the hearing that her pain was nine to ten out of ten four days a week, which was inconsistent with Dr. Cosgrove's October 2004 report that her pain was four to five out of ten. Dr. Cosgrove further indicated that Smith received significant benefit from her medications, and he did not indicate that she experienced more severe pain. The ALJ also found that Smith's testimony that she had significant problems with the side-effects of her medications was inconsistent with the treating medical records because Dr. Cosgrove, as the physician who treated her pain, never indicated that Smith reported side-effects from her medications. The ALJ then found that Smith's testimony regarding her physical limitations were unsubstantiated by the medical records. The ALJ noted that none of her treating physicians ever reported physical restrictions as severe as what Smith claimed in her testimony, and Dr. Kezar stated that Smith could perform sedentary work, even

14

without a fully healed ankle.  Furthermore, the ALJ found that three separate doctors recommended that Smith exercise, indicating that she was not as limited as she alleged.  The ALJ found no evidence of disabling limitations relating to her hypothyroidism or hypertension, and she had not been diagnosed with arthritis of the knees.  The ALJ specifically addressed Dr. Oblena's December 2002 report and concluded that it was based on Smith's subjective complaints, which were not supported by the other medical records.  The ALJ found that, other than some decreased range of motion in her lumbar spine, Smith's examination by Dr. Oblena was within normal limits.

The ALJ then concluded that Smith's testimony regarding her depression and anxiety was unsupported by the medical records.  He noted that she was diagnosed with depression and anxiety at Quality of Life in February 2003, and that in May 2003, Quality of Life reported that she had a good response to Zoloft. Although Dr. Kezar noted that Smith's mood was depressed in January 2004, Dr. Kezar did not diagnose Smith with depression or any other mental impairment.  In September 2004, Dr. Cosgrove noted that Smith had mild depression, which was treated.  The ALJ found that no treating or examining physician ever reported that Smith had disabling depression or any disabling limitations relating to mental impairments.

15

The ALJ concluded that Smith had the "residual functional capacity to perform sedentary work which allows for no more than occasional bending, stooping, squatting, or climbing; no pushing or pulling movements of the left lower extremity; no driving; no work at unprotected heights; a temperature controlled environment and a sit/stand option," and that "[a]ny testimony or allegations otherwise are not credible." Id. at 34. The ALJ then found, based on the VE's testimony, that Smith was capable of performing a significant number of sedentary jobs given her age, education, work experience, and residual functional capacity, and therefore, she was not disabled.

On 17 April 2006, after the ALJ's decision, Dr. Daniel Prince performed a consultive examination of Smith. Dr. Prince concluded that Smith was completely impaired, and she appeared to be a chronic pain patient with fibromyalgia (a chronic disorder characterized by widespread pain, tenderness, and stiffness of muscles and associated connective tissue structures) and multiple problems with mental and nervous disorders. Also after the ALJ's decision, on 20 June 2006, Dr. David Wilson performed a psychological evaluation in which he diagnosed Smith with, among other things, major, severe depression with possible psychotic features and a Global Assessment of Functioning ("GAF") of 45, which indicated serious mental symptoms or impairments. Dr. Wilson opined that her level of

16

impairment "would prevent her from functioning in any type of work setting." Id. at 416.

Smith appealed to the AC and submitted additional evidence, most of which duplicated evidence already before the ALJ. A 21 December 2005 report from Quality of Life, which was prepared after the ALJ's decision, showed that Smith reported her back pain was worse, her depression was worse, and her pain scale score was an eight out of ten. The AC denied Smith's request for review. The AC "considered the reasons [Smith] disagree[d] with the decision and the additional evidence listed on the enclosed Order of Appeals Council," and found that the additional evidence did not provide a reason to change the ALJ's decision. Id. at 7-8.

The district court affirmed the Commissioner's decision. In making its decision, the district court considered Smith's argument that the AC should have granted review or remanded her case based on the new evidence she submitted. The district court cited case law for the proposition that good cause is required when a claimant fails to submit evidence at the administrative level. The district court then considered the new evidence that Smith submitted to the AC, and concluded that "the majority of the evidence so submitted is either duplicative of records already submitted, or does not relate to the relevant time period." R1-12 at

17

20-21. The district court noted that while the Dr. Prince record may establish that Smith was disabled as of 17 April 2006, this was not in the relevant time period. The district court found no basis to remand "[b]ecause the medical records which could establish disability all post-date the ALJ's decision." Id. at 21. Therefore, the district court affirmed the Commissioner's decision. This appeal followed.

## II. DISCUSSION

1.     The ALJ's Decision Was Based Upon Substantial Evidence

We review a Commissioner's decision to determine whether it is supported by substantial evidence and whether the proper legal standards were applied. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Id. (quotation omitted). "Even if the evidence preponderates against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." Id. at 1158-59 (quotation omitted). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam) (quotation omitted).

A.     *Subjective Complaints of Pain*

When a claimant attempts to establish disability through her own testimony concerning pain or other subjective symptoms, we apply a three-part "pain standard," which requires "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain stemming from that condition; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (per curiam). The ALJ must explicitly and adequately articulate his reasons if he discredits subjective testimony. Id. "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (per curiam).

The ALJ found that the medical records did not support Smith's subjective claims of pain. The ALJ based his decision upon medical records establishing that Dr. Clark released Smith to light duty work in early 2002 following her back surgery in 2001, and that Dr. Clark performed additional tests following her complaints of pain, but, as of 30 October 2002, the tests did not reveal any evidence of disk herniation. Further, Dr. Clark never reported that Smith experienced disabling pain or limitations. Dr. Kezar, a specialist in physical medicine and rehabilitation, specifically stated in January 2004 that it was

19

reasonable for Smith to return to sedentary level work. Further, Dr. Kezar recommended that Smith seek vocational rehabilitation services for job retraining or education, implying that Dr. Kezar did not think Smith was experiencing disabling pain or limitations relating to her back impairment. Dr. Cosgrove, Smith's pain management specialist, reported in October 2004 that Smith was experiencing moderate, not disabling, pain, as she reported pain at no more than four or five out of ten. Dr. Cosgrove also indicated that Smith received significant benefits from her medication, her TENS unit, and she did not appear to be in distress. Dr. Cosgrove never reported that Smith experienced disabling pain or limitations relating to her back impairment.

We conclude that the ALJ properly found that Smith's testimony was not supported by the medical evidence and was inconsistent with Dr. Cosgrove's report that her pain was only four to five out of ten. In addition, Smith's treating physicians, the specialists who treated her back impairment, and the physicians at Quality of Life, never reported that she had disabling pain or limitations. See Wilson, 284 F.3d at 1225. The record does not show that Smith had a medical condition that was so severe that it could reasonably be expected to cause the levels of pain that Smith alleged. Therefore, substantial evidence supports the ALJ's rejection of Smith's subjective complaints of pain, and the ALJ did not err in

20

concluding that Smith's pain level was mild to moderate.

*B.    Physical Assessment*

The ALJ concluded that Smith had a residual functional capacity to perform sedentary work that allowed for "no more than occasional bending, stooping, squatting, or climbing; no pushing or pulling movements of the left lower extremity; no driving; no work at unprotected heights; a temperature controlled environment and a sit/stand option.  R2 at. 32.

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a); 20 C.F.R. § 416.967(a).  Social Security Ruling 83-10 elaborates on the definition of sedentary by providing that "'[o]ccasionally' means occurring from very little up to one-third of the time, and that periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday."  Kelley v. Apfel, 185 F.3d 1211, 1213 n.2 (11th Cir. 1999) (per curiam) (quotation omitted).

Substantial evidence supported the ALJ's determination of Smith's physical

21

limitations. As of 29 May 2002, Dr. Clark found no evidence of recurrent or residual disc herniation. On 3 December 2002, Dr. Oblena found that her major muscle groups had a graded strength of five out of five with no muscle atrophy. Smith's 9 January 2003 physical RFC indicated that she could occasionally lift and carry 20 pounds, and could frequently lift or carry 10 pounds. The assessment stated that she could stand, walk, or sit about six hours in an eight-hour workday, and could push or pull with unlimited frequency. The report further indicated that she could balance, stoop, kneel, crouch, and crawl occasionally. Therefore, according to the report, Smith was capable of performing sedentary work. See 20 C.F.R. § 404.1567(a); 20 C.F.R. § 416.967(a). In addition, none of Smith's treating physicians ever indicated she was as limited as she claimed to be, and no medical evidence substantiated Smith's claim that she needed to lie down periodically throughout the day. In fact, Dr. Kezar reported that she was capable of sedentary work in January 2004, despite her ankle fracture. Dr. Cosgrove, a pain management specialist, found that Smith's legs showed no unusual atrophy, impingement, or pseudomotor change, and she had good internal and external rotation at the hips with no crepitus at the knees.

The record supports the finding that Smith was capable of performing sedentary work, and none of Smith's treating physicians ever indicated she was as

limited as she claimed to be. Given that a reasonable person could find this evidence supports the ALJ's assessment of her physical limitations, the ALJ's did not err in determining Smith's physical limitations, because his assessment is supported by substantial evidence. See Crawford, 363 F.3d at 1158.

*C. Mental Assessment*

The ALJ found that Smith's medical records did not support a finding that she suffered from disabling depression or anxiety as she testified at the hearing. The record shows that she was diagnosed with mood disorder with depressive features at Calhoun-Cleburne in April 2003, but reported having some relief from Zoloft. By September 2003, her mood was stable, her insomnia was related more to her pain than her mood, she had no tearfulness, and she was finding pleasure in various activities. In January 2004, Dr. Kezar noted that Smith had a depressed mood, but she diagnosed no other mental impairment. Dr. Cosgrove diagnosed Smith with mild, treated depression, but found that, as of 4 October 2004, she received significant benefits from her medications and appeared to be in no apparent distress. Smith points to no evidence indicating she suffered disabling depression or anxiety, and no documents before the ALJ indicated that she was experiencing severe depression. Therefore, substantial evidence supported the ALJ's conclusion that Smith suffered no more than mild to moderate depression.

23

See id.

*D.    Dr. Oblena's Report*

The opinions of examining or treating physicians generally are given more weight than non-examining or non-treating physicians unless "good cause" is shown.  See 20 C.F.R. § 404.1527(d)(1), (2), (5); Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).  Good cause exists to discredit a physician's testimony when a physician's opinion is contrary to the evidence contained in the record.  Lewis, 125 F.3d at 1440.  Additionally, the Commissioner may reject any medical opinion if the evidence supports a contrary finding.  Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam).

Given all the evidence tending to show that Smith was not in disabling pain, substantial evidence justified the ALJ's decision not to accord much weight to Dr. Oblena's December 2002 report, which stated that Smith would have difficulty working due to her constant pain.  The ALJ found that Dr. Oblena's opinion was apparently based on Smith's subjective complaints, which the ALJ appropriately found were not substantiated by the record, and that the remaining portions of Dr. Oblena's report were essentially within normal limits, because the report indicated that Smith was in no acute distress, her pain was a six out of ten but was reduced by her medications, she had no muscle atrophy, and there was no evidence of

24

recurrent or residual disc herniation. Furthermore, Smith reported to both Dr. Kezar and Dr. Cosgrove that her medication improved her pain, and Dr. Kezar specifically indicated that it was reasonable for Smith to perform sedentary work as of January 2004. The ALJ was entitled to weigh the evidence, and his decision to disregard Dr. Oblena's conclusion was supported by substantial evidence.[1] Graham v. Bowen, 790 F.2d 1572, 1575 (11th Cir. 1986)

E.     *The ALJ Posed a Proper Hypothetical Posed to the VE*

When a claimant cannot perform a full range of work at a given level of exertion or has non-exertional impairments that significantly limit basic work skills, the preferred method of demonstrating that a claimant can perform other jobs is through the testimony of a VE. Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999). "[T]o constitute substantial evidence, the VE's testimony must be based on a hypothetical posed by an ALJ which encompasses all of the claimant's impairments." Id. The ALJ is not required to include findings in the hypothetical that he finds are unsupported. Crawford, 363 F.3d at 1161. The resolution of conflicting evidence is the function of the ALJ. See Graham, 790 F.2d at 1575.

The hypothetical posed to the VE was consistent with the medical evidence

---

[1] This Court need not address Smith's allegation that the ALJ previously has been found to have substituted his own opinion for that of medical experts, because, in this case, the ALJ's decision is supported by substantial evidence.

and other evidence on the record that the ALJ found to be credible. Given that substantial evidence supported the ALJ's finding that Smith experienced no more than mild to moderate levels of pain and depression, as described above, the hypothetical properly included these limitations. Substantial evidence supported that ALJ's conclusion that Smith's testimony concerning (1) her need to lie down throughout the day, (2) her moderately severe to severe pain or depression, and (3) the disabling side-effects from her medication, was not credible in light of the medical records. Consequently, the hypothetical relied on by the ALJ properly did not include these limitations. Crawford, 363 F.3d at 1161; see also Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1270 (11th Cir. 2007) (concluding that the ALJ properly omitted a claimant's alleged fatigue, insomnia, anxiety, and depression because they were either not supported by the medical records or were alleviated by medication). Accordingly, the hypothetical posed to the VE was proper because it included all of Smith's impairments. Since the ALJ posed a proper hypothetical, the VE's testimony constitutes substantial evidence that supports the denial of benefits. See Jones, 190 F.3d at 1229.

2.    The AC's Decision Not to Review

Smith argues that the AC failed to consider the new evidence that she submitted to it because, if it had considered the new evidence, it would have

granted review because the evidence would likely change the ALJ's decision and demonstrates that she is physically and mentally disabled. Smith emphasizes that the reports of Dr. Wilson and Dr. Prince show that she is eligible for benefits under listing § 12.04 (depression). Specifically, she notes that (1) Dr. Wilson evaluated her and concluded that she had major depression-recurrent and a GAF of 45, which would qualify her under listing § 12.04, and (2) Dr. Prince, based on his evaluation on April 17, 2006, concluded that Smith was disabled and completely impaired. The Commissioner responds that the AC properly denied review because it considered her new evidence and properly concluded that the evidence did not establish a basis on which to overturn the ALJ's decision.

If a claimant submits new noncumulative and material evidence to the AC after the ALJ's decision, the AC shall consider such evidence, but only where it relates to the period on or before the date of the ALJ's hearing decision. 20 C.F.R. § 404.970(b). "Material" evidence is evidence that is "relevant and probative so that there is a reasonable possibility that it would change the administrative result." Milano v. Bowen, 809 F.2d 763, 766 (11th Cir. 1987) (quotation omitted). When evidence is submitted for the first time to the AC, that new evidence becomes part of the administrative record. Keeton v. Dep't of Health and Human Servs., 21 F.3d 1064, 1067 (11th Cir. 1994). The AC considers the entire record, including the

new, material, and chronologically relevant evidence, and will review the ALJ's decision if the ALJ's "action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. § 404.970(b). We review "whether the new evidence renders the denial of benefits erroneous." Ingram, 496 F.3d at 1262. "When the Appeals Council refuses to consider new evidence submitted to it and denies review, that decision is also subject to judicial review because it amounts to an error of law." Keeton, 21 F.3d at 1066.

In this case, the AC considered Smith's newly submitted evidence but found no basis to review the ALJ's decision. The AC specifically stated that it "considered the reasons [Smith] disagree[d] with the decision and the additional evidence listed on the enclosed Order of Appeals Council," thus it did not err by failing to consider the new evidence. R2 at 7; see Keeton, 21 F.3d at 1066. In addition, the AC properly declined to review the ALJ's decision in light of the evidence submitted because the evidence was either not new or material. With respect to her physical condition, the evidence shows that Smith fractured her left ankle, and that she was doing "fairly well" with "residual aching pain and swelling." R2 at 538-72, 653-54. Records from 9 October 2003 to 6 January 2005, show that Smith was being treated for sinus and ear pressure, hypothyroidism, reflux, a broken ankle, back pain, and foot pain. The physical

therapy documents show that, by 10 March 2004, Smith was able to walk at least 15 minutes before experiencing pain, she was able to stand for more than 10 minutes in one sitting, her ankle strength had improved, her gait pattern was significantly better, and her function was progressing well. Treatment notes from April 2005 show that Smith indicated that all of her medications were helping, she was exercising, and she felt her strength had increased. She exhibited no excessive pain behaviors, and, although she had a slightly antalgic gait, she had good mobility overall. She also had been walking around the block three times a day using ankle weights to build her leg strength, and her lower extremities were normal for power and tone. In September 2005, Smith reported "good benefit" from her medications, and she was still walking around the block about three times a day and doing stretches. Id. at 433, 588. Other records dating from 15 March 2005 to 21 December 2005, id. at 424-29, 580-86, show that she was doing well at a follow-up in April 2005, when she reported a pain level of five out of ten, and, in July 2005, she denied pain and was exercising every day. None of these reports indicated that Smith was experiencing severe or disabling pain or physical limitations, and they appear to show that her medications were helping and she was improving. Thus, these records are not material, as they do not create a "reasonable possibility" of a different result. See Milano, 809 F.2d at 766.

29

With respect to Smith's mental condition, a mental status exam from Calhoun-Cleburne dated 5 August 2004, indicated a tentative diagnosis of depression. In June 2005, Dr. Cosgrove reported that Smith had some insomnia and depression but indicated that Trazodone was helping her, and in September 2005 he diagnosed her with treated mild depression. None of these reports indicated that she was suffering from severe or disabling depression, and therefore, do not conflict with the ALJ's decision.

Among the other new evidence Smith submitted was (1) a 20 June 2006 report from Dr. Wilson concluding that her impairments would prevent her from working; (2) a 17 April 2006 report from Dr. Prince concluding that she was completely impaired; and (3) a 21 December 2005 Quality of Life report, which indicated that Smith reported her back pain was worse, her depression was worse, and her pain scale score was an eight out of ten. While these three reports would strengthen Smith's contention that the new evidence showed she was disabled, these reports came after the ALJ's decision and, therefore, the AC does not consider them in determining whether to review the ALJ's decision. See 20 C.F.R. § 404.970(b).

Therefore, because none of the reports in the relevant time period indicated that Smith was experiencing severe or disabling pain or depression, and the reports

concluding that she was experiencing severe pain and depression took place after the ALJ's decision, the evidence did not establish a likelihood that the ALJ would have reached a different result, and the AC did not err by concluding that the weight of the evidence was not contrary to the ALJ's decision.

3.    The District Court's Decision Not to Remand Was Correct

We review de novo a district court's determination of whether newly submitted evidence necessitates a remand to the Commissioner. Vega v. Comm'r of Soc. Sec., 265 F.3d 1214, 1218 (11th Cir. 2001). When a claimant submits new evidence to the AC, the district court must consider the entire record, including the evidence submitted to the AC, to determine whether the denial of benefits was erroneous. Ingram, 496 F.3d at 1262. Remand is appropriate when a district court fails to consider the record as a whole, including evidence submitted for the first time to the AC, in determining whether the Commissioner's final decision is supported by substantial evidence. Id. at 1266-67. The new evidence must relate back to the time period on or before the date of the ALJ's decision. 20 C.F.R. § 404.970(b).

"Section 405(g) [of the Social Security Act] permits a district court to remand an application for benefits to the Commissioner . . . by two methods, which are commonly denominated 'sentence four remands' and 'sentence six remands.'"

31

Ingram, 496 F.3d at 1261.  A sentence four remand, as opposed to a sentence six

remand, is appropriate when "evidence properly presented to the Appeals Council

has been considered by the Commissioner and is part of the administrative record."

Ingram, 496 F.3d at 1269.  Under a sentence four remand, when a claimant has

submitted evidence for the first time to the AC, the claimant is not required to

show good cause.  See Melkonyan v. Sullivan, 501 U.S. 89, 99-100, 111 S.Ct.

2157, 2164 (1991) (recognizing "Congress' explicit delineation in § 405(g)"

between sentence four and sentence six remands and noting that a court may

remand under sentence six "only if the claimant shows good cause for failing to

present the evidence earlier"); see also Ingram, 496 F.3d at 1258 (recognizing that

we have previously "mistakenly stated that evidence first presented to the Appeals

Council could be considered by the court only if the applicant had good cause for

not presenting it earlier to the administrative law judge.").

Because Smith submitted new evidence for the first time to the AC, which

the AC considered, it became part of the administrative record and the only basis

for remanding her case would be a sentence four remand, not a sentence six

remand.  Because this is a sentence four remand situation, Smith was not required

to show good cause.  Here, the district court did not require Smith to show good

cause and did in fact consider the additional evidence Smith submitted to the AC,

32

as <u>Ingram</u> requires.  Because the district court considered the evidence Smith submitted for the first time to the AC, a remand for failing to consider the evidence under <u>Ingram</u> is unnecessary.  See <u>Ingram</u>, 496 F.3d at 1266-67.  Additionally, the evidence that Smith submitted after the ALJ's decision, which the district court properly considered, was either cumulative or immaterial, and therefore, the district court did not err in finding that the evidence did not establish a basis for remanding the case.

## III.  CONCLUSION

Sherry Smith appeals the district court's order affirming the Commissioner's denial of her application for disability insurance benefits, pursuant to 42 U.S.C. § 405(g).  Upon review of the administrative and district court records and the parties' briefs, we find no error.  The ALJ posed a proper hypothetical posed to the Vocational Expert, the Appeals Council properly declined to review the additional evidence Smith submitted to it on appeal of the ALJ's adverse decision, and the district court correctly found that the ALJ's decision is supported by substantial evidence and followed the proper legal standards.  Accordingly, the district court's order is **AFFIRMED.**